**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| **KAPITUS SERVICING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:26-cv-315** |
| | ) | |
| | ) | |
| **MARQUE DENTAL** | ) | |
| **LABORATORY, LLC, and** | ) | |
| **MICHAEL LUKES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Kapitus Servicing, Inc. ("Kapitus" or "Plaintiff"), by and through undersigned counsel, respectfully submits this Memorandum in Opposition to the Motion to Dismiss and Incorporated Memorandum of Law (the "Motion") filed by Defendants Marque Dental Laboratory, LLC ("Marque" or "Merchant") and Michael Lukes ("Mr. Lukes") (collectively, "Defendants"), and states as follows:

### INTRODUCTION

Defendants' Motion should be denied for two independent reasons. First, the Motion improperly relies upon facts that are nowhere alleged in the Complaint, nowhere found in the documents attached to the Complaint, and nowhere supported by any form of admissible evidence. Defendants repeatedly assert – and build their entire legal theory upon – the factual claim that "Marque ceased conducting business in early 2025." Yet this fact appears nowhere in the Complaint, nor in the Forward Purchase Agreement attached thereto as Exhibit 1. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the allegations in the complaint, and the Court

may not consider extrinsic factual assertions offered by the movant that are outside the record. Defendants' Motion is, in substance, an improper request for the Court to resolve contested factual questions at the pleading stage, something Fourth Circuit precedent expressly forbids.

Second, even setting aside Defendants' reliance on extraneous facts, the Motion fails on its merits. The Complaint alleges all elements of a breach of contract claim under Virginia law: (1) a legally enforceable obligation; (2) breach of that obligation; and (3) resulting damages. Kapitus has alleged specific contractual provisions, specific breaches, and specific damages flowing therefrom. Defendants' attempt to recharacterize Kapitus's well-pleaded breach of contract claim as somehow deficient is unavailing under controlling precedent.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

Critically, "a court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint and . . . a court is not permitted at this stage of the proceedings to 'resolve contests surrounding the facts' or 'the merits of a claim.'" *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (quoting *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023)). The court "must accept the facts as alleged as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020)).

**ARGUMENT**

I. **The Motion to Dismiss Improperly Relies on Facts Outside the Four Corners of the Complaint and its Attached Exhibits**

The threshold deficiency of Defendants' Motion is that it is built upon a factual predicate that is entirely extrinsic to the pleadings. The linchpin of Defendants' argument is the assertion that "Marque ceased conducting business in early 2025." M. at 2. Defendants themselves acknowledge that this fact is "nowhere alleged in the Complaint." *Id*. Yet they proceed to construct their entire theory of dismissal upon this unpled, unproven factual assertion, arguing that because Marque purportedly has no revenues, Kapitus cannot allege a breach.

This approach is flatly impermissible under Fourth Circuit law. "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd*., 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 448 (4th Cir. 2011)). "Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment." *Id*. (citing *E.I. du Pont de Nemours & Co*., 637 F.3d at 448). "This conversion is not appropriate when the parties have not had an opportunity to conduct reasonable discovery." *Id*. (citing Fed. R. Civ. P. 12(b), 12(d), and 56).

The Fourth Circuit has squarely held that "the district court cannot go beyond these documents on a Rule 12(b)(6) motion; if it does, it converts the motion into one for summary judgment." *E.I. du Pont de Nemours & Co*., 637 F.3d at 448. Further, Federal Rule of Civil Procedure 12(d) "ordinarily prohibits a court from considering evidence outside the pleadings on a motion to dismiss, unless the court converts the motion to one for summary judgment." *Doriety*,

3

109 F.4th at 679. A narrow exception permits consideration of a *document* outside the complaint only "when the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Id*. (quoting *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 166 (4th Cir. 2016)).

Here, Defendants' assertion that Marque ceased conducting business is not contained in any document integral to the Complaint. It is not alleged in the Complaint. It is not found in the Forward Purchase Agreement attached to the Complaint. It is not supported by any declaration, affidavit, or other admissible evidence submitted with the Motion. It is simply a naked factual assertion offered by defense counsel in a brief – one that Kapitus has not had the opportunity to test through discovery and does not concede. The Court should disregard this extrinsic factual assertion in its entirety.[1]

Because Defendants' primary arguments – that Kapitus has not alleged the existence of unremitted revenues, that Kapitus cannot allege a breach because there are no revenues to remit, and that Kapitus has suffered no injury – are all premised entirely on the unpled factual assertion that Marque is no longer an operating business. These arguments collapse once the impermissible extrinsic fact is disregarded. This alone is sufficient grounds to deny the Motion.

## II.     The Complaint States a Claim for Breach of Contract Against Marque

Even without regard to Defendants' improper reliance on extrinsic facts, the Complaint adequately states a claim for breach of contract under Virginia law. Under Virginia law, "[t]he

---

[1] Moreover, even crediting this factual assertion as true, it is incomplete and insufficient. Baldly asserting that Marque ceased operations "in early 2025" is as legally meaningless as it is vague. Kapitus alleges that the last payment made pursuant to the Agreement was on January 9, 2025, and that payment was a reduced payment of $92.75. Compl. ¶ 13. Based on these facts, Marque was in breach as of that date. Compl. ¶ 13. If Marque ceased operations sometime *after* it had already breached the Agreement – and thus already was indebted to Kapitus per the terms of the Agreement – then the fact that it did so is irrelevant. As of the date of breach and per the terms of the Agreement, once the breach has occurred, "the full uncollected Purchase Amount and any unpaid fees due shall become due and payable in full immediately." *See* Compl. Ex. 1, Agmt. ¶ 3.2.

elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004); *see also Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 323 (2015).

The Complaint alleges each of these elements as outlined below.

### a. A legally enforceable obligation

The Complaint alleges that on or about June 20, 2024, Marque entered into a Forward Purchase Agreement (the "Agreement") with Kapitus, pursuant to which Marque agreed to sell its future receivables in the amount of $178,100.00 in exchange for a purchase price of $130,000.00. Compl. ¶¶ 6-8. The Agreement is attached to the Complaint as Exhibit 1, and its terms speak for themselves.

### b. Breach of that obligation

The Complaint alleges that Marque is in default of the Agreement. Specifically, the Complaint alleges that Marque made its last payment on January 9, 2025, in the reduced sum of $92.75, and that no payments have been made since. Compl. ¶ 13. The Complaint further alleges that "pursuant to paragraph 3.1 of the Agreement, Merchant is in Default of the Agreement." *Id*. The Agreement's default provisions (which are incorporated by reference and attached to the Complaint) specify numerous Events of Default, including any violation of any term or covenant in the Agreement and any representation or warranty proving incorrect, false, or misleading. *See* Agreement § 3.1. The Complaint further alleges that between August 26, 2024 and February 28, 2025, multiple payments were rejected and as a result, $1,925 in rejected payment fees were incurred. Complaint ¶ 12.

Defendants' argument that a breach can only be established by alleging unremitted revenues fundamentally misreads both the Agreement and the applicable law. The Agreement contains numerous covenants, representations, and warranties, the breach of any one of which constitutes an Event of Default triggering acceleration of all amounts owed. *See, e.g.,* Agmt. §§ 2.1-2.16, 3.1, 3.2. The Complaint need not allege the precise mechanism of every breach at this stage; it is sufficient to allege that the defendant breached the contract and that the plaintiff was damaged thereby. *See Costello Constr. Co. of Md. v. City of Charlottesville*, 97 F. Supp. 3d 819, 826 (W.D. Va. 2015) (denying motion to dismiss breach of contract claim where plaintiff "adequately alleged each of these elements in its complaint" and holding that "[w]hether [the plaintiff] can ultimately prove that it suffered compensable damages under the parties' contract is a question more appropriately resolved at a later date"); *AvePoint, Inc. v. Power Tools, Inc*., 981 F. Supp. 2d 496, 511 (W.D. Va. 2013) (denying motion to dismiss breach of contract claim and stating that "a more appropriate review of the issue may be conducted after [the parties] have had an opportunity to present all relevant evidence").

Indeed, Kapitus's Complaint follows the same basic framework that Kapitus successfully employed in its motion for summary judgment in *Kapitus Servicing, Inc. v. MAC Contracting Group, Inc.*, Case No. 22-1316, 2026 WL 916624 (W.D. La. Jan. 1, 2026) (applying Virginia law in a breach of contract claim under a similar agreement). In that case, the court recognized that breaches of specific covenants (such as using multiple deposit accounts without consent, diverting receivables, closing authorized bank accounts, selling business assets without consent, and misrepresenting solvency) each independently constituted a default under a substantially similar Forward Purchase Agreement with similar default provisions. Though these other issues (use of multiple deposit accounts, diversion of receiveables, closing accounts without authorization or

notice) are not expressly at issue here, this case is nevertheless helpful for the proposition that any breach of the terms of the Agreement supports a claim for a breach of contract in this case. Most succinctly stated: Kapitus has pled that Marque signed an agreement to pay Kapitus. Marque failed to pay and thus breached the Agreement. Kapitus has been damaged. That is all that needs to be pled here. The structure of Kapitus's claims in this case similar to the structure outlined in the *MAC Contracting* case: specific contractual obligations, specific breaches thereof, acceleration upon default, and resulting damages. This satisfies the requirements under Virginia law to sustain a breach of contract claim.

### c. Even if Marque ceased doing business, that fact supports – rather than defeats – Kapitus' breach claim

Even crediting Defendants' own unpled assertion that Marque ceased conducting business in early 2025, this fact does not warrant dismissal. To the contrary, it constitutes evidence of multiple independent breaches of the Agreement's material terms.

First, Section 2.15 of the Agreement expressly prohibits "the suspension, dissolution, or termination of Seller's business without the express prior written consent of Purchaser, or the written agreement of any purchaser, assignee, or transferee assuming all of Seller's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser." *See* Agmt. § 2.15. If Marque ceased doing business without Kapitus's written consent or an assumption agreement by a successor – as Defendants' own Motion implicitly concedes – then Marque directly breached this provision.

Second, Section 2.1 of the Agreement contains an express representation and warranty that "[n]o material changes, financial or otherwise, in the condition, operation or ownership of Seller and Guarantor (as applicable) are in any way expected or anticipated and Seller and Guarantor do not anticipate closing or selling Seller's business." *See* Agmt. § 2.1. The Complaint alleges that

7

Marque executed the Agreement on June 20, 2024. Compl. ¶ 6. Between August 2024 and February 2025, a number of payments did not clear. Compl. ¶ 12. By January 9, 2025, Marque made its last payment of only $92.75. Compl.¶ 13. These facts give rise to an inference that Marque may have made material misrepresentations about plans for closing the business, if it did in fact shut down just six months after entering into the Agreement. Moreover, Section 2.1 imposes a "continuing, affirmative obligation to advise Purchaser of any material change in its financial condition, operation or ownership," and expressly provides that failure to do so "is a material breach of this Agreement." *See* Agmt. § 2.1. Marque's failure to timely inform Kapitus of its cessation of business directly triggers this material breach provision. Even in its bald assertions of fact in support of its Motion, Marque states that "Kapitus was notified shortly after Marque closed." M. at 9. But this is again vague and insufficient information that is improperly alleged in support of a Motion to Dismiss.

Third, multiple enumerated Events of Default under Section 3.1 are independently triggered by Marque's cessation of business: (i) Section 3.1(c) provides that it is an Event of Default if "Seller interrupts the operation of its business in the ordinary course (other than as a result of adverse weather, natural disasters or acts of God) without notice to Purchaser of any planned shutdown or interruption of operations"; (ii) Section 3.1(i) provides that it is an Event of Default if "Seller suspends, dissolves or terminates its corporate existence without notice to Purchaser"; and (iii) Section 3.1(f) provides that it is an Event of Default if "Seller shall violate any term, covenant, or condition in the Transaction Documents," which captures the violations of Sections 2.1 and 2.15 discussed above. *See* Agreement § 3.1.

Fourth, Section 3.4 of the Agreement independently requires Seller to "give Purchaser fourteen (14) days' prior written notice of . . . (b) the suspension, dissolution or termination of its

business." *See* Agmt. § 3.4. Marque's failure to provide this notice constitutes a separate violation of the Agreement.

Finally, upon any Event of Default, the Agreement provides that "the full uncollected Purchased Amount and any unpaid fees due shall become due and payable in full immediately." *See* Agmt. § 3.2. Thus, even accepting Defendants' own factual assertions as true – which is more than this Court should do on a motion to dismiss – those assertions further establish liability for the breach of the Agreement rather than negate Kapitus's claim. Defendants' Motion is therefore self-defeating: the very facts they assert in support of dismissal independently confirm the existence of multiple breaches and the acceleration of all amounts owed.

### d.  Injury or damage caused by the breach

The Complaint alleges that as of its filing, Defendants owe Kapitus the principal amount of $142,102.75, plus a default fee of $2,500.00 and returned ACH fees of $1,925.00, for a total balance of $146,527.75. Complaint ¶ 17. This is a concrete, particularized allegation of damages flowing directly from the breach. There is nothing deficient about it. In Virginia, "the plaintiff must allege facts setting forth the injury or damage incurred as a result of defendant's breach." *Ramos*, 289 Va. at 321. Kapitus has done exactly that.

### III.   Defendants' Unconscionability Argument is Based on Incomplete and Inaccurate Facts

Defendants argue that "a sale of $178,100.00 in future receivables, in exchange for a payment of $28,392.00, is unconscionable." M. at 8. This argument is based on incomplete and inaccurate facts. Defendants cite the "net purchase price" of $28,392.00 as though it were the entirety of the consideration flowing to Marque. It was not.

The Purchase Price under the Agreement was $130,000.00. The difference between the Purchase Price and the Net Purchase Price ($97,383.00) was credited to Defendants' prior funding

agreement with Kapitus, thereby satisfying Defendants' pre-existing indebtedness to Kapitus under that prior agreement. In other words, the $97,383.00 was not simply retained by Kapitus as profit or withheld from Defendants without benefit: it was applied to discharge Defendants' existing obligations, which was a direct and substantial benefit to Defendants. When the full $130,000.00 purchase price is properly considered – as it must be – Defendants' unconscionability argument loses whatever superficial force it may have appeared to carry.

Moreover, unconscionability is an affirmative defense under Virginia law, not a basis for dismissal under Rule 12(b)(6). An unconscionability defense requires factual development regarding the circumstances surrounding contract formation – precisely the type of inquiry that is inappropriate at the motion to dismiss stage. This is all the more true here, where Defendants' unconscionability argument rests on an incomplete and misleading presentation of the transaction's economics to generate a fictional "interest rate" of 395.81%. M. at 2.

## IV.    The Complaint States a Claim for Breach of Guaranty Against Mr. Lukes

Defendants argue that the Complaint fails to state a claim against Mr. Lukes for breach of his Guaranty. This argument fails for two reasons.

First, because the Complaint adequately alleges a breach of the underlying Agreement by Marque (as demonstrated above), the predicate for Guarantor liability is satisfied. The Guaranty provides that the Guarantor "unconditionally guarantees to Purchaser the Merchant's performance of all of the representations, warranties, covenants made by Seller in the Purchase Agreement, the Sale Terms and Conditions, the Security Agreement, Guaranty, and Agreement to Arbitrate." Agmt., Guaranty (Dkt. No. 1-2, p. 23). It further states: "It is understood by all parties that Guarantors are only guaranteeing that they will not take any action or permit the Seller to take any action that is a breach of the Transaction Documents." *Id*.

10

Second, Defendants misread the scope of the Guaranty. While it is true that Mr. Lukes guaranteed "performance of all of the representations, warranties, covenants" – rather than making "an absolute guaranty of repayment" – this does not insulate Mr. Lukes from liability where, as here, the Complaint alleges that the Merchant breached the Agreement by failing to perform those representations, warranties, and covenants. The Complaint alleges that Merchant is in default of the Agreement. Complaint ¶ 13. The Complaint alleges that, upon information and belief, "the acts and omissions that constitute default of the Agreement were performed or omitted by, at the direction of, or with the consent of Lukes." Complaint ¶ 14. The Complaint alleges that Mr. Lukes "personally guaranteed performance under the Agreement, agreeing, inter alia, that he would not take any action, nor permit Merchant to take any action, that would breach the Agreement." Complaint ¶ 21.

In the *MAC Contracting* case, the court agreed with Kapitus on a similar line of argument. In that case – just as in this one – "'if the Guaranty has no effect beyond what the Guarantors claim it does, there would be nothing serious of the Guarantors to acknowledge because they would have no personal liability to pay anything under the Agreement under any circumstances.'" *MAC Contracting*, 2026 WL 916624, at *7. Kapitus took the position that the "calculation of damages due to the Guarantors' breach of the Guaranty is the balance owed under the Merchant Agreement, which constitutes the receivables Kapitus purchased but never received." *Id.* The court held: "Kapitus is correct. If the Guaranty was only limited to the Performance of Section II of the Merchant Agreement, and no other provision could be taken into account, then numerous provisions of the Merchant Agreement, Security Agreement, and Guaranty would be redundant and meaningless." *Id.* at *8.

The allegations in the Complaint are sufficient to state a plausible claim against Mr. Lukes. Defendants' argument that it is "altogether unclear" what provision of the Guaranty has been breached (M. at 10) simply ignores the Complaint's allegations and the language within the Agreement itself, and improperly asks the Court to weigh evidence at the pleading stage. Whether Mr. Lukes took or permitted actions constituting a breach is a factual question for discovery, not a basis for dismissal.

## V.     Defendants' Policy Arguments Regarding the Financing Industry are Irrelevant to the Pleading Sufficiency of the Complaint

Defendants devote a substantial portion of their Motion to a policy discussion regarding the commercial financing industry, citing various bankruptcy court decisions from other jurisdictions characterizing forward purchase agreements as loans subject to usury laws. These citations are irrelevant to the Motion for multiple reasons.

First, Defendants concede that "Virginia does not have a commercial usury restriction other than that applicable through the law governing unconscionability." M. at 7 (citing Va. Code § 6.2-308). Thus, even if the Agreement were recharacterized as a loan – which it was not – there is no applicable usury statute that would render it unenforceable in Virginia.

Second, the bankruptcy court decisions cited by Defendants are not binding on this Court and arise in entirely different procedural contexts (i.e., adversary proceedings under the Bankruptcy Code). They do not establish that the Agreement at issue here is unenforceable as a matter of Virginia law.

Third, and most importantly, whether an agreement should be recharacterized as a loan is a fact-intensive inquiry that is categorically inappropriate for resolution on a motion to dismiss. It requires examination of the economic realities of the transaction, the allocation of risk between the

12

parties, and the parties' course of dealing – none of which can be assessed based solely on the pleadings.

### CONCLUSION

For the foregoing reasons, Kapitus respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

Dated:  May 15, 2026                              Respectfully submitted,

**KAPITUS SERVICING, INC.**

 *By Counsel*

            /s/ Laura Maughan            
Laura Maughan (VSB #87798)
Andrew Biondi (VSB #48100)
Sands Anderson, PC
919 E. Main Street, Suite 2300 (Zip 23219)
PO Box 1998
Richmond, VA  23218
(804) 648-1636 (Main)
(804) 783-7291 (fax)
lmaughan@sandsanderson.com
abiondi@sandsanderson.com

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of May 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the CM/ECF users noted below:

Maurice B. VerStandig, Esq.
Virginia Bar No. 81556
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Marque Dental*
*Laboratory, LLC and Michael Lukes*

                                      /s/ Laura Maughan
                                  Laura Maughan (VSB #87798)
                                  Sands Anderson PC