**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

KAPITUS SERVICING, INC.,

        Plaintiff,

v.

MARQUE DENTAL LABORATORY, LLC
and MICHAEL LUKES,

        Defendants.

_____/

Case No. 3:26-cv-00315-REP

**REPLY TO OPPOSITION TO MOTION TO DISMISS**

Come now Marque Dental Laboratory, LLC ("Marque") and Michael Lukes ("Mr. Lukes") (collectively, the "Defendants," and each a "Defendant"), by and through undersigned counsel, pursuant to Local Rule 7(f)(1), and in reply to the opposition (the "Opposition"), DE #9, to their motion to dismiss the above-captioned suit (the "Motion"), DE #3, state as follows:

### I.    Introduction

The Opposition—despite being exceedingly well-drafted—ultimately fails to present arguments sufficient to overcome the contentions set forth in the Motion. If anything, the Opposition reveals Kapitus Servicing, Inc. ("Kapitus" or the "Plaintiff") to be shifting legal theories, departing from the debt-centric contentions articulated in the complaint (the "Complaint"), DE #1-2, and instead adopting new—previously unannounced—allegations of non-economic contractual breach. Problematically, however, such is well beyond the purview of what may be considered in connection with a Rule 12(b)(6) motion. And the Plaintiff is thusly left to stand upon an argument that does not square with the plain text of the operative pleading.

1

Perhaps more confoundingly, Kapitus is—for the first time—proffering additional consideration to have flowed to Marque as part of the at-issue contract. Yet no such additional consideration is alleged in the Complaint. And the contract in question actually contains a so-called integration clause, expressly disclaiming any prior or other agreements to be subject to reliance. So there is a somewhat-awkward dichotomy, whereby the Defendants have noted extraneous facts, in their Motion, *not* to urge consideration of those facts but to demonstrate the paucity of the Complaint's allegations, whereas the Plaintiff has alleged extraneous facts, in their Opposition, in an effort to urge the sufficiency of the allegations in the Complaint.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be granted.

## II. Argument: Dismissal is Appropriate

### a. The Complaint's Failure to Allege Marque Remained in Business is Fatal in the Prism of the At-Issue Contract

Not surprisingly, the parties agree on the elements underlying a claim for breach of contract in the Commonwealth of Virginia (just as the parties agree on the standard governing motions to dismiss). The disagreement, rather, lies with whether or not the Complaint actually contains factual allegations sufficient—under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)—to adequately plead the elements of an extant contract, a breach thereof, and resulting damages. While a dispute exists as to each of the three elements, the Opposition devotes the majority of its ink to the second such prong, urging the Complaint does sufficiently allege a breach. This assertion is errant.

The Complaint appears to be a near-boilerplate document premised upon breach of an obligation to pay a fixed debt. Yes, the pleading does note the at-issue obligation to stem from a sale of future receivables. *See* Complaint, DE #1-2, at ¶ 9. But the pleading then turns to subsequent

paragraphs reciting a mere failure to make payments. *Id.* at ¶¶ 11-13, 17. The Complaint even goes so far as to characterize the alleged economic obligation as one of "principal" and a "default fee," *id.* at ¶ 17, before later seeking "interest" on the putative principal, *id.* at ¶ 22.

If Kapitus wishes to acknowledge the contract is really a disguised loan agreement, these allegations very likely do suffice in pleading a breach thereof. Yet, as noted in the Motion, Kapitus instead goes to great lengths to assert the monies it furnishes small businesses are not loans but, rather, purchases of inchoate future receivables. *See* Motion, DE #3, at § IV.

The contract recites a duty to tender to Kapitus 16.4% "of receipts." *See* Forward Purchase Agreement ("MCA Agreement"), DE #1-2, at p. 8, § 7. "Receipts," in turn, is defined to mean Marque's ". . . accounts, receipts, contract rights, and other rights to payment arising from or relating to the payment to Seller through cash, checks, electronic transfers, ACH transfers, credit cards, charge cards, debit cards, prepaid cards, mobile payments (including Apple Pay™ and other ACH payments) and other similar payment methods that may accrue to Seller in the ordinary course of Seller's Business." *Id.* at p. 8 (preamble).

There is thusly an irreconcilable tension, whereby the MCA Agreement requires only that Marque pay 16.4% of its "receipts" to Kapitus, yet the Complaint does not ever allege any receipts to have been accrued but not paid. The Complaint, rather, simply assumes the existence of receipts without ever actually alleging such.

In the Opposition, the Plaintiff makes much of Marque's cessation of business being extrinsic to the Complaint. The Plaintiff is absolutely correct in this regard. As the Motion itself acknowledges, the cessation of business is not alleged in the Complaint. *See* Motion, DE #3, at § I. Yet such is not an effort to introduce an extrinsic fact into the sphere of consideration for this

3

Honorable Court but, rather, an effort to highlight the pleading deficiency of the Complaint.[1]

Kapitus must plead that Marque remained in business *and* continued to receive "receipts," in order

to make a viable claim for breach of contract. Kapitus does not plead either of these things precisely

because Kapitus cannot, in good faith, make either such allegation. And the closure of Marque's

business is accordingly highlighted not to add fodder to the four corners of the Complaint but,

rather, to cast light upon the hole that is present in the Complaint.

Under *Iqbal*, this Honorable Court may draw "reasonable inference[s]" from the

Complaint. *Iqbal*, 556 U.S. at 678. As noted by the United States District Court for the Western

District of Virginia, "[a]n inference is defined as '[a] conclusion reached by considering other facts

and deducing a logical consequence from them[,]' and '[t]he process of thought by which one

moves from evidence to proof.'" *Crawley v. Combs*, 2017 U.S. Dist. LEXIS 27842, at *5 (W.D.

Va. Feb. 28, 2017) (quoting Black's Law Dictionary (10th ed. 2014); citing *Exergen Corp. v. Wal-Mart Stores. Inc.*, 575 F.3d 1312, 1329 n.5 (Fed. Cir. 2009)).

Here, it is not reasonable to infer—on the face of the Complaint—that Marque remained

in business. If anything, the Plaintiff's allegation that auto-debits of Marque's bank account "did

not clear," Complaint, DE #1-3, at ¶ 12, invites the reasonable inference that Marque either ceased

---

[1] If the Defendants wished to introduce evidence extrinsic to the four corners of the Complaint, they would have attached the letter sent to Kapitus, notifying Kapitus of the cessation of business. Such would have been arguably allowable, insofar as ". . . a court may consider . . . documents central to plaintiff's claim. . . so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (citing *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)). The notice of cessation of business would certainly seem "central" to the claim of unremitted receipts. And it is doubted the authenticity of the document would be disputed. But the Defendants have not attached this missive and are not standing upon the letter as of present insofar as such appears unnecessary: concentrating the focus of the Motion on what is absent from the Complaint is just as potent and does not risk a debate over the centrality of the letter to the Plaintiff's claims.

conducting business or, at irreducible minimum, was experiencing a dramatic reduction in "receipts" (which, in turn, would lessen the sum collectible by Kapitus, since that sum is pegged to 16.4% of receipts). And the Complaint accordingly comes shy of alleging a breach of the MCA Agreement in a manner sufficient to survive the rigors of *Iqbal* and *Twombly*.

### b. The Opposition's Newfound Theory of Damages Does not Mirror the Operative Pleading

Perhaps for the reasons discussed immediately above, there is a somewhat notable pivot in the Opposition, whereby Kapitus ceases to rely on the theory on monetary breach alleged in the Complaint and commences, instead, to assert a theory of non-economic breach. While no doubt creative, this shift is problematic for two reasons. First, this is plainly not what is alleged in the operative pleading. And, second, this invites heightened attention to the absence of plausible allegations of economic damages in a sum anywhere near that sought in the Complaint.

In defending the sufficiency allegations of a breach of the MCA Agreement, Kapitus points to (i) the allegation of a reduced payment being made, *see* Opposition, DE #9, at § II(b), and (ii) the allegation that "pursuant to paragraph 3.1 of the Agreement, Merchant is in Default of the Agreement," *id.* (quoting Complaint, DE #1-2, at ¶ 13). As noted above, the former does not nearly suffice insofar as the allegation of a reduced payment (followed by no payments) does not constitute an allegation that receipts continued to be received but were unremitted. And the latter is hardly credible, insofar as such is the precise variety of "[t]hreadbare recital[]" that is forbade by governing law. *Iqbal*, 556 U.S. at 678.

Seemingly cognizant of the problematic nature of the Complaint's paucity, Kapitus shifts theories at this juncture. The Opposition recites, for the first time, that "[t]he Agreement contains numerous covenants, representations, and warranties, the breach of any one of which constitutes an Event of Default triggering acceleration of all amounts owed." Opposition, DE #9, at § II(b)

(citing MCA Agreement at §§ 2.1-2.16, 3.1, 3.2). The Opposition goes on to note that it is a breach of the MCA Agreement for Marque to make "any representation or warranty proving incorrect, false, or misleading." Opposition, DE #9, at § II(b) (citing MCA Agreement at § 3.1). At one point, the Opposition notes that a breach may have occurred because Marque went out of business without seeking Kapitus' consent. *Id.* at § II(c).

Yet this is plainly not what is theorized in the Complaint, which is premised—*en toto*—on economic defaults in the form of non-payment. Nowhere does the Complaint allege a specific representation or warranty to have proven incorrect, false or misleading. And, more pointedly, one cannot distill—from the face of the Complaint—*any* such representation or warranty that is forming a basis of this action.

Kapitus relies on *Costello Constr. Co. of Md. v. City of Charlottesville*, 97 F. Supp. 3d 819 (W.D. Va. 2015) in support of the sufficiency of the breach pleaded in the Complaint. Yet *Costello* is inapposite, being a construction case where a contractor brought suit premised upon having agreed to perform under specific construction documents only to later discover hundreds of "'defect[s], conflict[s], inconsistenc[ies], or omission[s]' in the contract documents." *Id.* at 821. The contractor submitted 387 requests for information to the defendant (a municipality), and 191 proposed change orders, as these defects were discovered. *Id.* The city allowed 11 of the change orders, each of which permitted the contractor to "claim additional damages 'once the cumulative impact of the defects and resulting change directives could be ascertained.'" *Id.*

*Costello* is accordingly a case where very specific change orders form the basis of a breach of contract claim, where the alleged breach (failure to disclose defects) is clearly identified, and where the nature of the damages (economic harms stemming from the undisclosed defects) is clearly alleged. *Costello* is also a case where claim notices were submitted pre-petition, *id.* at 823,

6

with the submission of those notices being alleged in the pleading, *id.* It is also a case where some (albeit not all) of the issues were first heard by the defendant municipality's vendor appeals board before suit was brought, and where one claim was stayed so it may, too, be presented to that board before suit continued. *Id.* at 824-25.

It is difficult to look at *Costello*, where very specific change orders to a construction contract formed by the basis of the action, and to find support for the instant case where Kapitus has pleaded on one theory of breach in the Complaint but now endeavors to pivot to other theories of breach. *Costello* concerns damages stemming from specific change orders, as is ascertainable from the complaint in that case. This matter, by contrast, appears to be one for non-payment of monies but has now invited the Defendant to suggest the suit is instead premised upon breach of non-economic representations and warranties.

The same is true of Kapitus' other topically-cited case, *AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496 (W.D. Va. 2013). *AvePoint* is an intellectual property case, largely founded upon some very colorful allegations purported to be defamatory in nature (including that an American entity is " a Chinese company," maintaining software in India, with customers "dumping out of" multiyear deals). *Id.* at 507. There is, however, a breach of contract claim, and that cause of action is premised upon a very specific allegation: the defendant "breached the Terms and Conditions set forth on [the plaintiff's] website by downloading a trial copy of [specific software] for competitive, commercial purposes, and that [the plaintiff] has suffered direct and consequential damages as a result of the breach." *Id.* at 509.

The issue before the *AvePoint* Court, prompting the quotation used in the Opposition, was whether or not a "browsewrap agreement" (a presentation of terms of services through certain digital means) is valid under Fourth Circuit precedent. There was no ambiguity in what the alleged

agreement was (terms of service) or how that alleged agreement was breached (by downloading software for impermissible competitive purposes); the ambiguity was whether or not the form of contractual ascent was actually cognizable under governing law. Suffice it to posit, such is of no moment to the instant case.

This Honorable Court has previously held that a plaintiff "must clearly identify the specific obligation(s) that Defendant owed to Plaintiff and clearly explain how Defendant allegedly breached such obligation(s)." *Draper v. GEICO Secure Ins. Co.*, 2018 U.S. Dist. LEXIS 176939, at *4 (E.D. Va. May 3, 2018). This holding well echoes applicable case law from the nation over. *See, e.g.*, *Survant v. Charter Communs., Inc.*, 2018 U.S. Dist. LEXIS 144378, at *5 (W.D.N.C. Aug. 24, 2018) (". . . a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue.") (quoting *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002)); *Lupo v. JPMorgan Chase Bank, N.A.*, 2015 U.S. Dist. LEXIS 130869, at *21 (D. Md. Sep. 28, 2015) (". . . to plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached.") (citing *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F.Supp.2d 587, 602 (N.D. Tex. 2014)); Al-Ahmed v. Twitter, Inc., 648 F. Supp. 3d 1140, 1162 (N.D. Cal. 2023) ("To adequately plead a breach of contract claim, the plaintiff must identify 'the specific provision of the contract allegedly breached by the defendant.'") (quoting *King v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 209247, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019)); *He Depu v. Yahoo! Inc.*, 306 F. Supp. 3d 181, 193 (D.D.C. 2018) ("To claim a breach of contract in federal court[,] the complaint must identify the specific provision of the contract allegedly breached by the defendant.") (quoting *Kaar v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 71475 (N.D. Cal. June 1, 2016)).

The last of the foregoing citations—from the *He Depu* Court in a neighboring jurisdiction—is perfectly plain. The issue is not one of state law (seemingly every state has the same rigors attendant to a claim for breach of contract, which is a matter of hornbook law); the issue is, rather, one of conformity with federal pleading rigors. Kapitus has not satisfied those rigors in this case: the Opposition points to different contractual provisions than the Complaint, and the Defendants are still largely left to wonder which contractual provisions are actually at issue in this litigation.

### c.  The Opposition Does Not Overcome the Absence of a Sufficient Allegation of Damages

As noted above, there is a second issue with the changed theories of damages: the Complaint does not plead damages correlative to these putative non-economic breaches. *See, supra,* § II(b). The pleading is drafted in the style of an action to collect upon the unpaid portion of a promissory note and interest accruing thereupon, going so far as to use the verbiage of "principal" and "interest." Yet Kapitus is now shifting to a non-economic theory of breach, and the allegations of the Complaint accordingly come well shy of matching these putative infractions.

The Plaintiff relies on its own, unpublished case from another jurisdiction. *See* Opposition, DE #9, at § II(b) (citing *Kapitus Servicing, Inc. v. MAC Contracting Group, Inc.*, 2026 WL 916624 (W.D. La. Jan. 1, 2026)). That is a case where the defendant (i) lied about its solvency at the time of entering into an agreement with Kapitus; and (ii) diverted receipts away from the operating agreement Kapitus was authorized to debit. *MAC Contracting Grp.*, 2026 U.S. Dist. LEXIS 74870,

at *5 (W.D. La. Jan. 5, 2026).[2] In fact, the suit was not merely for breach of contract but, too, fraud in the inducement. *Id.* at *6. Perhaps most tellingly, though, that was a case in which the defendant did not ". . . contest the amount of damages claimed by Kapitus." *Id.* at *16. So to the extent *MAC Contracting Group* is intended to support the sufficiency of allegations in a complaint, such misses the mark. Moreover, *MAC Contracting Group* is a summary judgment opinion that necessarily does not speak to the sufficiency of pleading but, rather, to the non-existence of material disputes in a developed record.

Under Virginia law, when damages sought in a breach of contract action are "grossly in excess of actual damages, courts of law usually construe such a stipulation as an unenforceable penalty." *Taylor v. Sanders*, 353 S.E.2d 745, 747 (Va. 1987) (citing *Crawford* v. *Heatwole*, 66 S.E. 46, 47-48 (Va. 1909).

To whatever extent the Plaintiff is seeking $146,527.75 in damages for Marque having the temerity to "cease[] doing business without Kapitus's written consent," Opposition, DE #9, at § II(c), such would certainly appear to be the variety of grossly excessive liquidated damages forbade by Virginia law. And the Defendants, in turn, would have assuredly raised this issue in their Motion. But, as noted *passim*, Kapitus has changed theories between the Complaint and the Opposition, creating a prism whereby the Defendants are now confronting theories of breach extrinsic to the actual pleading.

---

[2] As is apparent from the nature of the citations, it appears counsel for the Plaintiff uses Westlaw, while undersigned counsel relies on LexisNexis. There is a slight discrepancy—of four days—in the date of this case. Upon review of the case docket via PACER, however, it appears January 5, 2026 is the correct date and it is respectfully suggested Westlaw's date may be a thoroughly innocuous typographical error. The Defendants do not feign any significant to attach to the discrepancy.

It remains thoroughly unclear how Kapitus believes it has actually been damaged by any conduct of Marque. The issue is not that the Complaint fails to allege damages in a sum certain (something that would actually be permissible); the issue, rather, is the Complaint seeks $146,527.75 in damages without ever alleging how the conduct of Marque invited any actual harm to befall the Plaintiff.

Since damages are elemental to a claim for breach of contract, a "plaintiff is required to prove he was damaged as a result of the alleged breach of contract." *Cullen v. Cook*, 1992 U.S. Dist. LEXIS 3039, at *12 (W.D. Va. Mar. 2, 1992) (citing *Locke v. Johns-Manville Corp.*, 275 S.E.2d 900, 904 (Va. 1981)). *See also Williams Co. Se. v. Solar Eclipse Window Coverings, LLC*, 2025 U.S. Dist. LEXIS 213387, at *11 (W.D. Va. Oct. 29, 2025) ("The court must independently assess whether the complaint's well-pleaded allegations support the total damages sought. Under Virginia contract law, a plaintiff must prove damages with reasonable certainty, but damages 'need not be established with mathematical certainty.'" (citing *DIRECTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006); *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009), quoting *Estate of Taylor v. Flair Property Assocs.*, 448 S.E.2d 413, 416 (Va. 1994)).

Here, there is absolutely no causal relationship between the damages sought in the Complaint and the theories of breach being espoused in the Opposition. If this case really rests on Marque going out of business without the Plaintiff's express, written consent (something that strikes as an enormously problematic contractual clause on which to base a lawsuit), the Plaintiff ought to at least proffer that damages are pegged to revenue that would have been received had Marque remained in business. Yet the Complaint does not make any such allegation.

11

### d. The Contract is Unconscionable as Alleged in the Complaint

The Motion notes that a sale of $178,100.00 in future receivables, for $28,392.00, is facially unconscionable. *See* Motion, DE #3, at § V. The Opposition, in turn, urges this contention "is based on incomplete and inaccurate facts." Opposition, DE #9, at § III. The Opposition goes on to allege various facts—including consideration in the form of a retirement of a prior obligation—that are not contained in the Complaint. This is problematic for the very reason discussed *supra*: a plaintiff cannot rely on allegations extrinsic to a pleading in defending a motion to dismiss under Rule 12(b)(6).

It appears Kapitus is now saying the grotesque economic disparity is because "$97,383.00[] was credited to Defendants' prior funding agreement with Kapitus," Opposition, DE #9, at § III. This assertion is troubling, though, for two reasons.

First, not to belabor the obvious which is discussed throughout both parties' briefing, but Kapitus cannot rely on an alleged fact that is not part of the Complaint. *See, e.g.*, *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) ("Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion.") (citing *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

Second, this allegation simply does not make sense. The MCA Agreement purports to be a *purchase* of future receipts. If Kapitus had already acquired future receipts from Marque, logic does not much support how a prior purchase could be rolled into a subsequent sale of *different* receipts. It is not only that this theory is suspiciously similar to the refinancing of a loan (while Kapitus protests it is not in the lending business); it is, too, that Kapitus is essentially urging its prior purchase of Marque's "receipts" can be satisfied through a buyout that does not actually involve consideration changing hands or already-purchased receipts being collected. This notion

12

defies both logic and the plain language of the MCA Agreement. And if Kapitus is going to rely on this theory of consideration, such is all the more reason the theory needs to be pleaded and tested through a motion to dismiss—not introduced in opposition to an already-filed motion to dismiss.

There is also an added problem with this hastily-introduced theory: the notion is belied by the MCA Agreement itself. The MCA Agreement never recites the forgiveness of any prior obligation(s) of Marque. Yet the MCA Agreement provides, much to the contrary, that "[t]he Transaction Documents embody the entire agreement between Seller, Guarantor(s), and Purchaser and supersede all prior agreements and understandings relating to the subject matter hereof." MCA Agreement, DE #1-2, at p. 18, § 4.11.

Further, while the Opposition suggests unconscionability to be an affirmative defense that cannot be raised in a motion to dismiss, *see* Opposition, DE #9, at § III, the brief is conspicuously absent of any supporting legal authority for this proposition, *id.* A review of case law, however, reveals much the opposite, with the Fourth Circuit having expressly held that affirmative defenses may be considered as part of a Rule 12(b)(6) motion: "In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." *Richmond, F. & P. R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (citing *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1992); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 348-49 (2d ed. 1990)).

The unconscionability assertion of the Defendants is clear on the face of the Complaint. The Complaint attaches the MCA Agreement and the MCA Agreement recites, in thoroughly plain language, that $178,100.00 in future receivables are being bartered away for $28,392.00. The

Complaint does not contain any allegations that cast additional light on this factoid. Nor does the MCA Agreement otherwise contain any provisions impacting this reality.

Yes, the Plaintiff does suggest other facts—in the Opposition brief—that may be used to counter the unconscionability issue. But facts alleged in an opposition brief are, of course, not "on the face of the Complaint.," *Forst*, 4 F.3d at 250, and are not properly considered in connection with a motion to dismiss, *Linlor*, 263 F. Supp. 3d at 618. Such is all the truer where, as here, the facts alleged in the opposition brief do not actually follow the logical stream of the supposed relationship of the parties, and where the actual MCA Agreement expressly disclaims any such extrinsic understanding or arrangement.

### e.  The Basis of Mr. Lukes' Alleged Guaranty Liability Remains Wholly Unclear

The Opposition does little to shed light on just what theory(ies) underlie the claim for breach of contract against Mr. Lukes. The Plaintiff agrees that the at-issue guaranty is limited in nature. Yet the Plaintiff surmises that since the Complaint alleges Marque is in breach of the MCA Agreement then, *ipso facto*, Mr. Lukes is in breach of his limited guaranty thereof.

Kapitus relies on language from the Complaint alleging that "the acts and omissions that constitute default of the Agreement were performed or omitted by, at the direction of, or with the consent of Lukes." Opposition, DE #9, at § IV (quoting Complaint, DE #1-2, at ¶ 14). Yet, as noted above, it remains at-best-unclear what breach(es) are being alleged of Marque. And, more worryingly, the Complaint does absolutely nothing to allege how any such breaches actually are the byproduct of Mr. Lukes' actions or inactions.

Familiarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

14

It is genuinely difficult to surmise what is being alleged by the Plaintiff, of Mr. Lukes. Without significantly more, Mr. Lukes finds himself in the position of defending a lawsuit without actually being put on notice of the ills he has putatively committed so as to give rise to being haled into court.

### f. The Nature of the MCA Industry is Highly Relevant to a Case in Which an MCA Entity is the Plaintiff

The Plaintiff takes issue with the discussion of the MCA industry set forth in the Motion. *See* Opposition, DE #9, at § V. The Defendants have shared this background merely to cast light upon a niche industry that seemingly more often encounters bankruptcy courts than district courts, the innerworkings of which inform the provisions of the MCA Agreement instantly at issue. The contract being sued upon contains some truly unusual provisions that do not, unto themselves, appear to make enormous sense. Yet when placed in the context of an industry eager to avoid being cast as trafficking in the business of lending monies, the stranger provisions make greater sense— and the failure to allege an actual breach of the at-issue contract becomes clearer.

The Defendants acknowledge that none of the cases cited in the Motion involve Kapitus. Yet the Opposition also does nothing to distinguish those cases from the conduct of Kapitus in this case. There is no dispute but that Kapitus is a player in the MCA industry. Nor is there any dispute but that the agreement in this case is an MCA contract. So, in the face of an ever-evolving, and ever-more-potent line of case law condemning the actions of MCA entities and questioning the plausibility of MCA transactions, such seems exceedingly salient.

## III.    Agreement to Submit on Papers

Counsel for the parties have conferred and, pursuant to Local Rule 7(E), agree to submit the Motion on the papers.

## IV.   Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) dismiss the above-captioned suit; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 21, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Virginia Bar No. 81556
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Marque Dental Laboratory,*
*LLC and Michael Lukes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of May, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the CM/ECF users noted below::

Laura Maughan, Esq.
Andrew Biondi, Esq.
Sands Anderson, PC
919 E. Main Street, Suite 2300
PO Box 1998
Richmond, VA 23218
lmaughan@sandsanderson.com
abiondi@sandsanderson.com
*Counsel for the Plaintiff*

/s/ Maurice B. VerStandig
Maurice B. VerStandig

16