**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

KAPITUS SERVICING, INC.,

      Plaintiff,

v.

MARQUE DENTAL LABORATORY, LLC
and MICHAEL LUKES,

      Defendants.

_____/

Case No. 3:26-cv-00315-REP

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Come now Marque Dental Laboratory, LLC ("Marque") and Michael Lukes ("Mr. Lukes") (collectively, the "Defendants," and each a "Defendant"), by and through undersigned counsel, pursuant to this Honorable Court's scheduling order, ECF No. 12, and (i) answer the complaint (the "Complaint"), ECF No. 1-2, of Kapitus Servicing, Inc. ("Kapitus," the "Plaintiff," or the "Counter-Defendant"); (ii) furnish affirmative defenses to the claims of Kapitus; and (iii) assert a counterclaim:

**Answer**

1.    Pursuant to Federal Rule of Civil Procedure 8(b)(3), the Defendants generally deny each and every allegation of the Complaint except as otherwise set forth herein.

2.    The Defendants admit the allegations set forth in paragraphs 1-3, 6-7, and 16 of the Complaint.

3.    Paragraph 5 of the Complaint does not contain allegations that invite an admission or denial but, to the extent so required, the Defendants incorporate their preceding admissions and denials.

1

**Affirmative Defenses**

4.      The Complaint fails to state a claim for which relief may be granted.

5.      The contract appended to the Complaint as Exhibit 1 is unconscionable and, as such, unenforceable.

6.      The doctrine of laches prohibits the Plaintiff from recovering herein.

7.      The doctrine of unclean hands prohibits the Plaintiff from recovering herein.

8.      The doctrine of first breach prohibits the Plaintiff from recovering herein.

9.      The doctrine of setoff prohibits the Plaintiff from recovering herein.

10.     The doctrine of recoupment prohibits the Plaintiff from recovering herein.

11.     The doctrine of *in pari delicto* prohibits the Plaintiff from recovering herein.

**Counterclaim**

*Introduction*

12.     This case concerns the efforts of Kapitus to disguise predatory lending practices by feigning to be in the business of purchasing future receivables from merchants.

13.     Kapitus engages this charade for various reasons including—but not limited to—(i) endeavoring to evade the commercial usury laws of various states; (ii) avoiding the reputational harm that would flow from issuing promissory notes with interest rates habitually in excess of 80% per annum; and (iii) luring less-sophisticated small businesses, and their principals, into lending arrangements without identifying the more repulsive terms thereof.

14.     Marque and Mr. Lukes (collectively, the "Counter-Plaintiffs") are victims of this confidence scheme, having been duped into doing business with Kapitus without an appreciation of the predatory provisions of the lending arrangement and having subsequently suffered the economic detriments thereof.

15. The harm occasioned by the Counter-Plaintiffs, while far from novel, is particularly noteworthy insofar as such puts the lie to Kapitus' claim of being in the receivables-purchasing business: when Marque ceased conducting business, and notified Kapitus of such, Kapitus simply proceeded to regard the remaining "receivables" as an unpaid loan and to pursue collection activities—to and through the commencement of this very lawsuit.

*Parties and Jurisdiction*

16. The parties to this suit are those alleged in the underlying Complaint.

17. This Honorable Court enjoys jurisdiction over the instant counterclaim, pursuant to the allowances of section 1367 of title 28 of the United States Code, insofar as the counterclaim is so related to the claim set forth in the Complaint as to form a part of the same case or controversy under Article III of the United States Constitution.

18. Additionally, this Honorable Court enjoys jurisdiction over the instant counterclaim, pursuant to the allowances of section 1331 of title 28 of the United States Code, insofar as the Counter-Plaintiffs seek relief under the Securities Exchange Act of 1934, a federal statute.

*General Allegations: MCA Industry*

19. This case concerns the merchant cash advance ("MCA") industry, of which Kapitus is a major participant.

20. An MCA transaction is ordinarily a disguised form of predatory loan, whereby an entity like Kapitus tenders funds to a small business and, in return, receives an aggressive repayment commitment that often exceeds 80% per annum.

21.    The fiction of an MCA transaction is that the arrangement is not a loan but, rather, a sale of "future receivables," with a merchant receiving cash in exchange for parting with a percentage of future revenues.

22.    Unlike a traditional factoring arrangement, however, the merchant in an MCA transaction is not selling any cognizable, extant receivable or pool of receivables; in an MCA transaction, the merchant is selling a portion of *all* future receivables, a wholly inchoate and legally inalienable asset.

23.    Also unlike a traditional factoring arrangement, an MCA transaction ordinarily contains provisions that ensure the merchant is, in reality, repaying a loan, with the terms of future collection having little-to-nothing to do with the merchant's actual receivables.

24.    MCA transactions are structured to maximize the chances of MCA entities being repaid their monies—with interest—regardless of the future performance of a given merchant, and key to such is a combination of (i) hair-trigger default provisions that effectively accelerate debt or an owner's guaranty of repayment; (ii) overly-complex reconciliation provisions that make changing payment sums prohibitively difficult; and (iii) pressure tactics from employees of MCA entities.

25.    Kapitus is one of the preeminent entities in the burgeoning national MCA industry.

*General Allegations: MCA Agreement*

26.    The heart of this counterclaim is the same contract that underlies the Complaint: the Forward Purchase Agreement (the "MCA Agreement") attached to the Complaint as Exhibit 1.

27.    The MCA Agreement was drafted by Kapitus and was the standardized form of agreement used by Kapitus in connection with most of the entity's merchant cash advance transactions in June 2024.

28.    The MCA Agreement provides for Kapitus to tender $28,392.00 to Marque in exchange for Marque agreeing to barter $178,100.00 in future revenues to Kapitus, payable at the rate of $2,571.00 per week.

29.    Viewing the MCA Agreement as a disguised loan, the foregoing numbers equate to an interest rate of 385.88% per annum.

30.    The MCA Agreement is accompanied by a guaranty (the "Guaranty"), which Kapitus required Mr. Lukes to execute as a condition to entering into the MCA Agreement.

31.    The Guaranty was drafted by Kapitus, using the entity's standard form from June 2024.

32.    The Guaranty is styled in such a manner as to putatively only act as a guaranty of the veracity of representations, warranties and covenants set forth in the MCA Agreement but— as alleged by Kapitus itself in the Complaint—the Guaranty binds Mr. Lukes to "all terms of the [MCA] Agreement," with Mr. Lukes "personally guarant[ying] performance under the [MCA] Agreement. . ."

*Count I: Violation of Securities and Exchange Commission Rule 10b-5*

33.    The Counter-Plaintiffs repeat and reallege each and every foregoing paragraph of this counterclaim, as though fully set forth herein.

34.    The MCA Agreement and Guaranty—both executed on June 20, 2024—contain various material misrepresentations and omissions.

5

35. Specifically, the MCA Agreement provides, *inter alia*, "Seller and Purchaser intend that the transfer of the interest in the Receipts from Seller to Purchaser constitutes a forward sale, and not a loan, for all legal, practical and business purposes," when the transaction occasioned by the agreement is, in actuality, a loan.

36. It was the intent of Kapitus that the at-issue transaction be, materially, a loan, with Kapitus being in the business of lending monies and disguising such loans as future receivables purchases.

37. Specifically, despite being a loan, the MCA Agreement does not set forth an interest rate and thereby omits a material fact.

38. Moreover, the Guaranty purports to only be a guaranty of the veracity of representations, warranties, and covenants but, as alleged by Kapitus, is a guaranty of full performance under the MCA Agreement.

39. Kapitus made these misrepresentations and omissions with scienter, as Kapitus is motivated to deceive merchants (like Marque) and their principals (like Mr. Lukes).

40. Specifically, Kapitus would not garner as much business if Kapitus disclosed transactions to actually be loans, because presentation of the associated interest rates would cause potential counterparties to decline to enter into agreement on such conscious-shocking terms.

41. Specifically, Marque would not have agreed to borrow money at the rate of 385.88% per annum.

42. Specifically, Mr. Lukes would not have personally guaranteed a loan at the rate of 385.88% per annum.

43. It is further evident Kapitus made these misrepresentations and omissions with scienter insofar as the inclusion of these misrepresentations—and the exclusion of these omitted

6

material terms—from Kapitus' standardized agreement permits Kapitus to conduct business in states with commercial usury limits, by allowing Kapitus to feign to be a purchaser and not a lender.

44.    Marque has suffered an economic loss on account of the MCA Agreement by paying to Kapitus monies of not less than $35,997.25.

45.    Marque and Mr. Lukes have suffered added economic loss on account of the MCA Agreement and Guaranty in the form of legal fees incurred in connection with Kapitus' bringing of suit to collect upon the agreements.

46.    The misrepresentations and omissions of Kapitus have directly invited these losses insofar as Marque and Mr. Lukes would not have signed the documents if they properly disclosed that a loan was being made at an interest rate of 385.88% per annum and Mr. Lukes was personally guaranteeing that loan.

47.    A loan is a security within the definitional ambit of section 78c(a)(10) of title 15 of the United States Code.

WHEREFORE, the Counter-Plaintiffs respectfully pray this Honorable Court (i) enter judgment against Kapitus, and in favor of the Counter-Plaintiffs, in the sum of $35,997.25; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

7

Respectfully submitted,

Dated: August 10, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Virginia Bar No. 81556
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Marque Dental Laboratory,*
*LLC and Michael Lukes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of August, 2026, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system which will send

notification to the CM/ECF users noted below::

Laura Maughan, Esq.
Andrew Biondi, Esq.
Sands Anderson, PC
919 E. Main Street, Suite 2300
PO Box 1998
Richmond, VA 23218
lmaughan@sandsanderson.com
abiondi@sandsanderson.com
*Counsel for the Plaintiff*

/s/ Maurice B. VerStandig
Maurice B. VerStandig

8