Exhibit A

# Commonwealth of Virginia

FIFTEENTH JUDICIAL CIRCUIT

JUDGES
Gordon F. Willis
J. Overton Harris
Charles S. Sharp
Sarah L. Deneke
Michael E. Levy
Patricia Kelly
Herbert M. Hewitt
Victoria A. B. Willis
R. Michael McKenney
Ricardo Rigual
William E. Glover

RETIRED JUDGES
William H. Ledbetter, Jr.
H. Harrison Braxton, Jr.
Ann Hunter Simpson
John R. Alderman
Horace A. Revercomb, III
J. Martin Bass
David H. Beck
Harry T. Taliaferro, III
Joseph J. Ellis

J. Overton Harris
Patricia Kelly
Hanover Circuit Court
Post Office Box 505
Hanover, Virginia 23069-0505
(804) 365-6161

March 5, 2021

Timothy A. Hennigan, Esq.
Nguyen & Ballato, PLC
2201 Libbie Avenue
Richmond, Virginia 23230
*Counsel for Plaintiff*

Gary L. Denton, Esq.
McCaul, Martin, Evans & Cook, PC
P.O. Box 279
Mechanicsville, Virginia 23111
*Counsel for Defendant*

**Re: Strategic Funding Source, Inc. v. Milton Jules Segal; CL18003803-00**

Dear Counsel:

**STATEMENT OF THE CASE:**

This matter is before the Court on three different contracts between Strategic Funding Source, Inc. ("Strategic Funding") and Milton Segal ("Segal"). After considering the evidence, arguments, and relevant law, the Court rules as follows: (1) that Segal has breached all three contracts with Strategic Funding; (2) that the contracts do not violate Virginia's usury laws; (3) that Segal's Equal Protection rights under the Constitution have not been violated.

**FINDINGS OF FACT:**

The following facts are established by a preponderance of the evidence:

1. Segal entered into three contracts with Strategic Funding. The first contract was signed on May 18, 2017 with the agreement that Segal would receive $95,000.00 as an advance, and Strategic Funding would receive $124,450.00 in future receivables from Segal. The second contract was entered on July 28, 2017 where Segal received an advance of $40,000.00, and Strategic Funding would receive $48,800.00 from Segal's future receivables. The third contract was signed on October 3, 2017, and Segal received $50,000 in advance and agreed to pay Strategic Funding $62,500.00 in future receivables.
2. Strategic Funding would take out a daily deduction called Automatic Clearing House ("ACH") payments from Segal's account to pay for the future receivables.
3. Beginning in early 2018, the daily deductions by Strategic Funding were unable to be completed due to insufficient funds. By October 29, 2018, Segal had defaulted on the contract by failing for a period of months to pay the daily deductibles to Strategic Funding.
4. Strategic Funding deposited advances and took out daily deductions from Segal's account named M J Segal & Associates.
5. When Segal stopped making payments on the May 18, 2017 contract, he owed $75,151.89 in future receivables. Additionally, he owed $550.00 in returned ACH fees.

6. At the time Segal stopped making payments on the July 28, 2017 contract, he owed $31,252.11. He also owed $385.00 in returned ACH fees.
7. When Segal stopped paying the October 3, 2017 contract, he owed $55,302.00 and $385 in returned ACH fees.

**CONTENTIONS AND ISSUES:**

The Plaintiff contends that Segal has breached all three contracts, and the contracts allow the Plaintiff to accelerate payments upon default; therefore, the Court should find Segal is liable for breach of contract and award Plaintiff the unpaid balance on all three contracts.

The Defendant contends that the contracts (1) have an interest rate that violate Virginia's usury laws and (2) violate the Equal Protection rights of Segal because legislation provides support to some individuals and business in light of COVID-19, but does not provide protection to Segal. Therefore, Defendant asks this case to be dismissed with prejudice

The issues are: (1) Whether the three contracts signed between Strategic Funding and Segal have been breached; (2) if the contracts violate Virginia's usury laws; (3) if Segal's rights under the Equal Protection Clause have been violated.

**RULE OF LAW:**

1. Filak v. George, 267 Va. 612, 619 (2004): "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."
2. Palmer & Palmer Co., LLC v. Waterfront Marine Const., Inc., 276 Va. 285, 290 (2008) [internal citation omitted]: "When the interpretation of a contract involves a term that is clear and unambiguous, the term is given its plain meaning. A contractual term, absent a

definition in the contract, is construed according to its usual, ordinary, and popular meaning."

3. Stacy v. Stacy, 53 Va. App. 38, 44 (2008) [internal citation omitted]: "When a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written."

4. Pocahontas Min. Liab. Co. v. CNX Gas Co., LLC, 276 Va. 346, 353–54 (2008) [internal citations omitted]: "In ascertaining the parties' intention regarding specific contract provisions, we consider the document as a whole. When the writing, considered as a whole, is clear, unambiguous, and explicit, a court asked to interpret such a document should look no further than the four corners of the instrument."

5. Virginia Code at § 6.2-317(B): "No person shall, by way of defense or otherwise, avail himself of the provisions of this chapter, or any other statutory or case law relating to usury or compounding of interest, to avoid or defeat the payment of interest, or any other sum, in connection with a loan made to a person for business or investment purposes, if the initial amount of the loan is $5,000 or more."

6. Metro. Cleaning Corp. v. Crawley, 12 Va. App. 1167, 1171 (1991), citing Black's Law Dictionary, Fifth Edition [internal citations omitted]: "Defines sole proprietorship as a form of business in which one person owns all the assets of the business in contrast to a partnership and corporation. The sole proprietor is solely liable for all of the debts of the business."

**ANALYSIS:**

**I. The Plaintiff Established that the Defendant Breached All Three Contracts.**

Segal breached all three contracts entered between Strategic Funding and Segal in 2017. Breach of contract is established when: (1) there is a legally enforceable obligation between the

parties; (2) the obligation is breached; (3) the breach results in damage. Filak v. George, 267 Va. 612, 619 (2004).

There are three contracts between Segal and Strategic Funding that are at issue. All three contracts are enforceable agreements between the parties.

The first contract was entered into on May 18, 2017 with the agreement that Segal would receive $95,000.00 as an advance, and Strategic Funding would receive $124,450.00 in future receivables from Segal. Strategic Funding's exhibits show Segal stopped paying on the contract and owed $75,151.89. Pursuant to Appendix A, Segal was also liable for any ACH fees due to insufficient funds. Segal also owed $550.00 in returned ACH Fees for the first contract. This totals $75,701.89. Strategic Funding has been damaged by Segal's failure to pay and complete his legal obligations under the contract.

The second contract was entered on July 28, 2017 where Segal received an advance of $40,000.00, and Strategic Funding would receive $48,800.00 from Segal's future receivables. Evidence showed that Segal stopped paying on this contract in 2018 and owed $31,252.11. Appendix A of this contract also had a clause making Segal liable for any returned ACH fees. Segal owes $385.00 for returned ACH fees on this contract making a total of $31,637.11 owed.

The third contract was signed on October 3, 2017, and Segal received $50,000 in advance and agreed to pay Strategic Funding $62,500.00 in future receivables. Segal stopped making daily deduction payments on this contract in 2018 leaving a balance of $55,302.00. This contract states in Appendix A that any returned ACH fees are charged to Segal. Segal owes a total of $385.00 in returned ACH fees on this contract. In total, Segal owes Strategic Funding $55,687.00 on the third contract.

Segal has failed to complete his obligations under these contracts and therefore is in breach of all three contracts owing a total of $163,026.00.

## II. The Contracts Do Not Violate Virginia's Usury Laws.

The three contracts in issue do not violate Virginia's usury laws because the contracts are not loans and are solely for business purposes and not personal use.

Segal argues that Virginia Code § 6.2-303 states that no loan may have an interest rate exceeding 12 percent per year. It is Segal's submission that these contracts are for personal loans and have an interest rate higher than 12 percent a year; thus, the contracts are void.

To determine the parties specific intent and purpose of the contract, the Court will examine the document as a whole. Pocahontas Min. Liab. Co. v. CNX Gas Co., LLC, 276 Va. 346, 353–54 (2008). "When the writing, considered as a whole, is clear, unambiguous, and explicit, a court asked to interpret such a document should look no further than the four corners of the instrument." Id.

Here, the Court finds the document to be clear and unambiguous as to its intention that this contract is not a loan. Page one of the contract has a header stating "Purchase and Sale of Future Receivables." Paragraph 1.9 of the contracts states that the parties agree "that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan." It further states that Strategic Funding "has purchased and shall own all Receipts described." The language used shows that the intention of the contract is not to create a loan, but to sell future receivables to Strategic Funding.

Furthermore, by examining the whole contract it is clear the intention is for the agreement to apply to businesses. Virginia Code at § 6.2-317(B), holds that the defense of usury

is not available "to avoid or defeat the payment of interest, or any other sum, in connection with a loan made to a person for business or investment purposes, if the initial amount of the loan is $5,000 or more." Va. Code § 6.2-317. Paragraph 2.12(k) of the contract states that the party entering this contract is doing so for business purposes and not for personal use. On the contracts dated July 28, 2017 and October 3, 2017, Segal checked a box at the top of the contract stating his entity was a sole proprietorship. A sole proprietorship is "a form of business in which one person owns all the assets of the business in contrast to a partnership and corporation. The sole proprietor is solely liable for all of the debts of the business." Metro. Cleaning Corp. v. Crawley, 12 Va. App. 1167, 1171 (1992), citing Black's Law Dictionary, Fifth Edition. Even the plain language used to describe Segal throughout the contract as a "merchant" shows that this is a contract for business purposes. Segal represented to Strategic Funding that he was acting on behalf of his business by agreeing to these terms and purporting to be acting as a sole proprietorship.

The Court finds that the usury laws of Virginia have not been violated since this is not a loan and the transaction was not for personal use but for business use.

## III. Segal's Equal Protection Rights Have Not Been Violated Because He Breached the Contracts in 2018, Prior to COVID-19.

Segal's Equal Protection rights have not been violated because he breached the contracts well before COVID-19 started.

Segal argues that his rights under Equal Protection Clause were violated because the government is providing funding, resources, and in some instances, judicial stays due to the COVID-19 virus. Segal has not been given any such treatment by the government which violates his rights under the Equal Protection Clause.

However, as Strategic Funding points out, Segal stopped paying on all three contracts in 2018. In February of 2018, Segal started having many ACH payments returned due to insufficient funds on all three contracts. This was close to two years before the COVID-19 virus affected the United States and these legislations came into play.

Because Segal has been in breach of these contracts for a lengthy period of time prior to the COVID-19 virus affecting the United States, the Court finds that his Equal Protection rights have not been violated.

**CONCLUSION:**

The Court rules that (1) Segal breached all three contracts entered between Strategic Funding and Segal in 2017; (2) these contracts do not violate Virginia's usury laws; (3) Segal's Equal Protection rights have not been violated.

**ORDER:**

Segal owes Strategic Funding $163,026.00 plus an interest rate at six percent per annum from the date of judgment. No attorney fees are awarded to Strategic Funding as Counsel did not provide any evidence of fees. Counsel for Strategic Funding shall prepare and circulate an order consistent with the findings and ruling in this opinion for entry within two weeks.

Very truly yours,

J. Overton Harris
Hanover County Circuit Court Judge