Exhibit B

# COMMONWEALTH OF VIRGINIA
## FOURTEENTH JUDICIAL CIRCUIT

L.A. HARRIS, JR., JUDGE
RICHARD S. WALLERSTEIN, JR., JUDGE
JOHN MARSHALL, JUDGE
RANDALL G. JOHNSON, JR., JUDGE
RONDELLE D. HERMAN, JUDGE

GOVERNMENT COMPLEX
4309 E. PARHAM ROAD

MAILING ADDRESS:
P.O. BOX 90775
HENRICO, VA 23273-0775

TELEPHONE: (804) 501-4750
FACSIMILE: (804) 501-5505

## CIRCUIT COURT OF HENRICO COUNTY

February 14, 2022

Timothy Hennigan, Esquire
Nguyen Ballato, PLC
2201 Libbie Avenue
Richmond, Virginia 23230
*Counsel for Plaintiff*

Melissa Zeller, Esquire
The Law Office of William B. Lawson, P.C.
6045 Wilson Boulevard, Suite 100
Arlington, Virginia 22205
*Co-Counsel for Defendant*

William B. Lawson, Esquire
The Law Office of William B. Lawson, P.C.
6045 Wilson Boulevard, Suite 100
Arlington, Virginia 22205
*Co-Counsel for Defendant*

**Re: Kapitus Servicing, Inc. v. Lena LA d/b/a T.J. Nails**
**Case No.: CL21-1205**

Dear Counsel:

This matter came before the Court on February 4, 2022 upon a hearing on the Defendant's Motion to Strike Future Receivables Factoring Agreement as Unconscionable. During the hearing, the Plaintiff made a motion to strike the Defendant's Motion to Strike Future Receivables Factoring Agreement as Unconscionable. The Court took both motions under advisement upon further reflection.

## Facts

On October 22, 2019, the Defendant, Lena La d/b/a T.J. Nails, executed Future Receivables Factoring Agreement with Kapitus LLC ("Kapitus") through a third-party agent which also contained a personal guarantee in her capacity as owner of T.J. Nails (the "Guaranty") (collectively, the "Agreement"). The Agreement was serviced through the Plaintiff, Kapitus Servicing LLC (also "Kapitus"). The Agreement provided that the Defendant would receive an advance of $43,500 in exchange for the purchase and sale of future receivables of $63,945.00. Kapitus would collect on the future receivables by withdrawing $821.00 from the Defendant's bank account weekly.

Around July 24, 2020, the Defendant defaulted on the Agreement by not making weekly payments as agreed due to the negative effects of COVID-19 on the Defendant's earnings. By this date, the Defendant had paid Kapitus $19,236.50. The Plaintiff filed suit against the Defendant as the personal guarantor of the Agreement.

The Defendant entered into the Agreement through a third-party broker, Quickspot Funding. The Defendant has limited education of about the 6th grade and is not fluent in English. The Agreement and Guaranty were in English. The Defendant elicited a friend of a friend of hers to assist with the application.

## Argument

The Defendant argues that the Agreement and Guaranty are procedurally and substantively unconscionable, unenforceable, unreasonable and unfair as they are an adhesion contract. The Defendant asserts that the Agreement and Guaranty are usurious due to the unequal bargaining power, one-sided terms, attorney's fee provision and arbitration provision. In effect, the Defendant argues that the although the Agreement is labeled as an agreement as a future receivables factoring agreement, it is in effect is a loan. Like payday loans, the Plaintiff is preying on unsophisticated small business owners who have no other market alternatives and

resources. The Defendant also argued that the Agreement is an adhesion agreement, and that the Defendant is protected under the Virginia Consumer Protection Act. The Defendant also argued that she did not fully understand the terms and conditions of the Agreement and Guaranty as they were in English in small font. The Defendant is not fluent in English. According to the Defendant, it was the Plaintiff's responsibility to provide her with documents in her native language, Vietnamese.

Relying on Virginia Code §6.2-317, the Plaintiff argues against the Defendant's allegations and asserted that usury as a defense is not applicable in this case. The Plaintiff also argues that the Agreement which is commercially funded is not subject to consumer protections. The Plaintiff argues that it is not their responsibility to ensure that the Defendant understood the Agreement and that she should've taken steps to ensure her understanding before executing the Agreement and Guaranty.

## Findings of the Court

A breach of contract case has several elements:

(1) a legally enforceable obligation of a defendant to a plaintiff;
(2) the defendant's violation or breach of that obligation;
(3) consequential injury or damage to the plaintiff

See *Filak v. George*, 267 Va. 612 (2004). The issue in this case is whether there is a legally enforceable obligation of a defendant to a plaintiff as the other two elements have been conceded.

### A. Virginia Consumer Protection Act and Virginia Usury Laws

While the Court finds that the Defendant has limited education and does not read or speak English well, usury and consumer protection do not apply in this case. Virginia Code §59.1-198

defines a consumer transaction as one that is "used primarily for personal, family or household purposes." Provision 2.12 of the Agreement titled "Business Purpose" clearly states that the Defendant "is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes."

The Agreement is a factoring agreement where Kapitus agreed to the purchase and sale of future receivables from the Defendant. The Defendant contends that she did not fully understand the terms and conditions of the Agreement due to her limited education and language barrier. The Defendant suggests that the Plaintiff should have been more accommodating and provided documents to the Defendant in Vietnamese. It is not the Plaintiff's responsibility to proactively provide the Defendant with documents in Vietnamese. There was no request for this accommodation made by the Defendant.

The Defendant contends that the Agreement is a loan and that it should be deemed unconscionable due to the terms and the unequal bargaining power. Page one of the Agreement clearly labels the document in underlined and bold capital letters as a "Future Receivable Factoring Agreement." Also, the Defendant had the option of seeking legal counsel or some other assistance to understand the documents. A statement in bold capital letters on the Guaranty directly above where the Defendant initialed labeled "Guarantor Acknowledgement" provides that:

> the "Guarantor acknowledges that…she has had a full opportunity to consult with counsel of…her choice….and…she has consulted with counsel of…her choice or has decided not to avail…herself of that opportunity."

In fact, the Defendant did seek help from a "friend of a friend" who she indicated encouraged her to execute the Agreement and Guaranty and advised her that it would be "a quick loan with a quick repayment." *See Page 2 of 5 of the Guaranty.* The Plaintiff is not responsible if the Defendant chose not to seek assistance from counsel but sought assistance from a "friend of a friend" whose advise was not beneficial.

Even if the Agreement were a loan, the Defendant may not use usury as a defense as the loan would have been solely for business purposes and was over $5000 as contemplated in Virginia Code §6.2-317. The Court finds that the Agreement is not covered under the Virginia Consumer Protection Act as it was solely for business purposes.

**B. Adhesion Contract**

An adhesion contract is a “"standard-form contract prepared by one party, to be signed by another party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms." See *Flint Hill Sch. v. McIntosh,* No. 181678, 2020 WL 33258, at *5 (Va. Jan. 2, 2020) (unpublished) citing Black's Law Dictionary 403 (11th ed. 2019). The Defendant suggest that because the Agreement is an adhesion contract, the Court should find that it is procedurally and substantively unconscionable per se. However, as discussed in *Fries v. Myers & Fitness Int'l, LLC* (Va. Cir. 2020), most contracts in present times are adhesion contracts as they were designed to simplify business transactions. The finding that a contract is an adhesion agreement does not in itself make it unconscionable.

To be unconscionable, the “inequality must be so gross as to shock the conscience.” *Smyth-Brothers-McCleary-McClellan Co. v. Beresford*, 128 Va. 137, 170 (1920). The test used in Virginia is whether anyone with his or her senses and not under delusion would agree to the terms of the contract. *Id.* Here, the Defendant received an advance of $43,500 in exchange for the purchase and sale of future receivables of $63,945.00. Kapitus would collect on the future receivables by withdrawing $821.00 from the Defendant’s bank account weekly. In the event of a default, the Defendant would be required to pay interest and costs including 25% attorneys’ fees. Many business owners and sole proprietors with their senses who are not under any delusion have decided to enter into similar agreements with the Plaintiff. There is nothing in this Agreement which shocks the conscience and there is nothing in this Agreement which would favor one party over the other.

The Agreement also contained an arbitration provision. In Virginia, public policy favors arbitration. *See TM Delmarva Power, L.L.C. v. NCP of Virginia*, 263 Va. 116 (2002). Section 4.11 of the Agreement labeled "Arbitration" provided a warning to the Defendant in all capital letters and explained in separate subsections in detail a). covered claims b). arbitration limits c). how arbitration works d). paying for arbitration e). the final award f). survival and severability of terms and g). the right to opt out of arbitration (in all capital letters).

## CONCLUSION

The Court finds that the Agreement is an enforceable agreement for purchase of future receivables which was solely for business purposes. Therefore, it is not covered under the Virginia Consumer Protections Act and the Defendant is prohibited under the law to a usury defense. The Court also finds that although the Agreement may be considered an adhesion contract, it is not unconscionable.

The Defendant's Motion to Strike Future Receivables Factoring Agreement as Unconscionable is denied.

The Plaintiff's Motion to Strike the Defendant's Motion to Strike Receivables is granted.

Mr. Hennigan shall prepare, circulate and submit an order reflecting the Court's rulings within 30 days.

Sincerely,

Rondelle D. Herman
Henrico County Circuit Court Judge